# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

FADERA HEARD,

        Plaintiff,

      v.                        Case No. 23-CV-1162

MARTIN O'MALLEY,
**Commissioner of the Social Security Administration,**

        Defendant.

---

## DECISION AND ORDER

---

### 1. Introduction

Alleging she has been disabled since January 1, 2017 (Tr. 17, 36, 247, 254), plaintiff Fadera Heard seeks supplemental security income and disability insurance benefits. Her date last insured was December 31, 2021. (Tr. 17, 97, 99.) After her application was denied initially (Tr. 33-92, 115-33) and upon reconsideration (Tr. 158-65), a hearing was held before Administrative Law Judge (ALJ) Margaret J. O'Grady on November 16, 2022 (Tr. 12-32). On February 16, 2023, the ALJ issued a written decision concluding that Heard was not disabled. (Tr. 96-108.) After the Appeals Council denied Heard's request for review on July 14, 2023 (Tr. 1-6), she filed this action. All parties have consented to the

full jurisdiction of a magistrate judge (ECF Nos. 5, 7), and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Heard "has not engaged in substantial gainful activity since January 1, 2017, the alleged onset date[.]" (Tr. 99.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Heard has the following severe impairments: "depression; schizophrenia; psychosis; and bipolar disorder." (Tr. 99.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-

month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Heard "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 99.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Heard has the RFC

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: able to understand, remember and carry out simple instructions; requires regular work duties and expectations with occasional changes; and can occasionally interact with coworkers and supervisors but not have public interaction.

(Tr. 101.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work.

20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Heard "is capable of performing past relevant work as a hospital cleaner (DOT # 323.687-010; SVP 2; generally performed at light but performed by the claimant at medium). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 107.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

Heard's psychotic symptoms were significant and led to frequent hospitalizations between 2017 and early 2020. (Tr. 102.) Since March 2020 her symptoms were controlled such that there is ample evidence they would not be work preclusive. In fact, Heard expressed a desire to return to work (although she was hesitant to do so because of her boyfriend's jealousy). (Tr. 105.)

The ALJ found that the period between 2017 and early 2020 was marked by Heard's frequent noncompliance with her medication and treatment regimens, abuse of alcohol, and attempts to self-medicate with frequent marijuana use.[1] (Tr. 102-03.) In March 2020, after police found her in a restaurant basement "acting bizarre" and detained her, *see* Wis. Stat. 51.15; (Tr. 488), Heard began obtaining regular medical and psychiatric care (Tr. 103-05). From then on, she took her mediations as required, followed treatment recommendations, and ceased alcohol and marijuana consumption. (Tr. 103-05.) Heard's

---

[1] At the hearing, Heard denied drinking alcohol or using recreational drugs ever in her life. (Tr. 23.) The record, however, contains many references to Heard's use and abuse of alcohol and drugs. (*See, e.g.*, Tr. 102 (ALJ's discussion of evidence of Heard's alcohol and drug use); 388 ("She uses marijuana and drinks alcohol."); 399 (noting Heard reported using marijuana "a few times per week"); 409 ("admits to using cannabis frequently and 'occasional' alcohol use); 421 (cousin noting that Heard's condition began to decline when she "was drinking heavily"); 598 ("Has been self medicating with THC which likely is exacerbating her condition"); 610 (note that she tested positive for marijuana following admission); 621 ("she has approximately 5 alcoholic beverages a day and smokes marijuana daily"); 978 (Heard's cousin reporting that if Heard "is near alcohol she drinks until she passes out or the alcohol is gone"); 982 ("Client stated she drinks heavily and smokes weed to make her feel high to forget about her negative thoughts."); 1154 ("Still using THC. Drinks alcohol occasionally when her mom visits."); 1540 (noting AODA history and Heard's statement "I don't drink that much"); 1543 (noting report that an incident "got out of hand" because she was drinking).)

medical records did not note any complaints of side-effects from her medication. (Tr. 104-05.)

The ALJ found, "When not using alcohol and marijuana, as well as taking her prescribed medication, the claimant was stable (8F-9F; 12F; 15F-20F)." (Tr. 107.) Thus, the ALJ relied on Heard's symptoms and limitations during the latter period to conclude she was not disabled. Heard argues the ALJ erred by relying on this evidence and failed to adequately explain why she was not disabled between 2017 and 2020. (ECF No. 15 at 5-10.) She contends that the ALJ should have considered whether she was disabled during the period 2017 to March 2020. (ECF No. 27 at 5-6.)

The ALJ did not err in relying on evidence of Heard's condition after March 2020. That evidence reflected Heard's limitations when she complied with treatment. A person is not disabled if her limitations arise only because she has, without a good reason, failed to follow prescribed treatment. *See* 20 C.F.R. §§ 404.1530 and 416.930; SSR 18-3p. This was not an instance of an ALJ failing to consider a line of contrary evidence. Rather, the ALJ reasonably accepted that evidence of Heard's condition after March 2020 reflected what her condition would have been before March 2020 if she had complied with prescribed treatment. *Cf. Shramek v. Apfel*, 226 F.3d 809, 812 (7th Cir. 2000) (noting that 20 C.F.R. § 404.1530 applies if the claimant would be able to return to work if she followed the prescribed treatment) (quoting *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985)); *Ehrhart v. Sec'y of HHS*, 969 F.2d 534, 538 (7th Cir. 1992) ("The Secretary may

not find total disability when a claimant inexcusably refuses to follow a prescribed course of medical treatment that would eliminate his total disability.").

Heard does not argue that she had a good reason for failing to comply with treatment before March 2020. Nor does she argue that the ALJ failed to adequately consider possible explanations for her prior non-compliance. *Cf. Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010). Under these circumstances, the ALJ appropriately relied on records from March 2020 and later to conclude that the opinions of two state agency consultants were persuasive. (*See* Tr. 105-06.)

The ALJ's explanation was sufficiently clear for the court to trace her reasoning. Because the ALJ regarded Heard's condition before March 2020 as reflective only of Heard's impairments when she did not comply with prescribed treatment, the ALJ did not err in failing to more fully discuss the opinions of Frank Orosz, a third state agency consultant. Orosz's opinion was from April 2020 (Tr. 46), just a month into the turn-around precipitated by Heard's compliance with prescribed treatment. As such, it only reflected Heard's condition when she was non-compliant. A claimant's limitations when she, without a good reason, fails to comply with prescribed treatment are not probative of whether she is disabled. Therefore, there is no error requiring remand.

## 5. Conclusion

For the reasons set forth above,

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**.

The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 9th day of July, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge